Okay, we'll proceed with the next case. Lexjac v. Board of Trustees. Good morning, Your Honor. May it please the Court, my name is Chris Murray. I'm appearing on behalf of the appellants Lexjac, LLC, and Richard Entel. The issue on this appeal is whether a resolution passed in 2005 by the Board of Trustees of the Village of Muttontown is void pursuant to the general municipal law. That resolution declined an offer of dedication that had been given to the village with regard to a 1.1 acre parcel of land. This Court in a prior appeal held that that resolution constituted a contract within the meaning of the general municipal law and remanded the matter back to the District Court for further determinations. The District Court then held that that 2005 resolution was void under the general municipal law. Initially, the District Court held as a matter of law that the contract, the 2005 resolution, was void because it was entered into willfully. We believe that that's an error. First of all, this Court has consistently held that the issue of whether something is willful within the context of a statute is an issue of fact. The record here clearly does not establish that the entering into the 2005 resolution was a willful violation of the general municipal law. First of all, I would point to the fact that the District Court originally held that the 2005 resolution was not a contract and not governed by Section 801 of the general municipal law. We're beyond that. I understand that, but going to the question of willful, if a court's initial determination was that it wasn't covered, I don't believe that you can say that. What does willful mean in this context? Well, it's a little bit undetermined. This Court, with regard to federal statutes, has held that willful requires a knowing or reckless disregard that the actions violate a law. Doesn't it perhaps differ whether willful is used in a criminal context or in a civil context? The Supreme Court has held that it still requires more than just undertaking the act, knowing that you're undertaking the act. It requires some level of either knowing that you violated the law or you showed a reckless disregard that you're violating the law. It's just not like an absolute or liabilities provision. Didn't the court in Landau, the Second Department, find that it was enough to meet the willful requirement for purposes of voiding the contract to find that the parties executed it with full knowledge of the broker's interest, not necessarily the lawfulness or non-lawfulness of it, but the relative interests of the parties? I don't believe that that's what the Second Department held. The Second Department was not determination of willful under the general municipal law. The cases that I'm aware of have held in New York State that still something is more than just requiring the act. Because if it was, then willful really would have no meaning. They would just say any contract entered in violation of general municipal law 801 is void. They used the word willful. The word willful has to have been given some meaning. Otherwise, if they just wanted any contract that violated the act is void, they wouldn't have used the word willful. The word willful . . . He knew would require approval of the board. I don't believe that he . . . First of all, it wasn't a contract in the sense of the word that there was a conveyance. It was a resolution declining an offer of dedication by a third party. He recused himself, again, indicating that he . . . and then disclosed his interest, indicating that he wasn't trying to willfully do anything. That also suggests he knew. The reason why he recused himself was he knew that there at least was the appearance of an interest. He knew he had an interest in the ultimate because . . . Why isn't that enough to be willful? Because it doesn't show that he understood that his actions violated the law or have any reason to . . . In fact, in 2007, when they voided the resolution under the new mayor, they didn't say it was void. They didn't say it was void under the general municipal law. They didn't refer to it as a contract. They rescinded it. They didn't say it was void. They didn't even think that it was a contract under the general municipal law. That only came up after the fact when this litigation started. He recused himself. The district court finally didn't believe it was a contract. This court, in its initial decision, could not make a determination that it violated general municipal law 801 because of the recusal. I don't think we were weighing in one way or another. We were sending it back for the district court to deal with it in the first instance. The argument was that it was void then before this court. This court could not make that determination at that time. They did remand it back to the district court. This was just a resolution passed by a village trustee that benefited the village that was not a direct contract between the parties. The suggestion, arguably the appearance, is that he was getting this piece of property substantially below the market cost. True or not true, there's at least the appearance of it, the arguable appearance of it. Isn't the law, section 801, intended to avoid the possibility of wrongdoing? It prohibits those types of contracts. You have to go to the language of 804. The 804, using the Wilford language, has a meaning. Alternatively, it has suggested that this court is interpreting a New York State statute where there is no law as to recusal, as to willful, and making determination a first instance of New York State law that would probably be more appropriate for the New York State Court of Appeals to make that determination. Could you address your procedural due process claim? If the contract was indeed null and void, as we have just been discussing, what's the source of the property right? He was the owner of the property. He had a fee ownership. If the 2005 contract was void, that wasn't a contract for the sale of the property or anything like that. That was with regard to accepting an offer of dedication. He was a fee owner of the property. If the 2005 was void, then they would have to accept the offer of dedication. He always was the fee owner up until 2007 when they passed the offer of dedication. That's his property interest. He owned it. If we were to agree with you about that, what remedy would he be seeking now? I understood he's saying that he didn't get notice of the 2007 resolution. Because he was the fee owner, he deserved that. That doesn't necessarily dictate that a result would have been different if the parties were acting with him. You don't know what the result would have been. He would have been given a notice. He would have been given an opportunity to challenge it or an opportunity to argue against it. So right now you're arguing that the 2007 resolution should be undone and a hearing held in the village? With notice to him. That's correct. But again, I still don't believe that they've met the willful. I think willful is an issue of fact. This Court has consistently held that it's an issue of fact as to whether the actions are willful. I don't think the record goes anywhere close to saying that a rational jury could not find that his actions were not willful. So I believe the District Court erred in making a determination as a matter of law on something that is clearly an issue of fact. This Court has consistently held it's an issue of fact. May it please the Court, my name is Stephen Leventhal. I represent the incorporated village of Muttontown. Good morning. If I may, I would like to begin where Mr. Murray ended on the language of the statute, the language of 804, the language of 805. This statute has a very clear statutory scheme. It has one section that deals with civil nullification, that's 804, and a separate section that deals with criminal liability, 805. The standard for nullification is the willful entering into of a contract that is prohibited by the statute. The willful entering into of a contract. As compared with section 805, which imposes criminal liability for a knowing and willful violation of the law. Comparing and contrasting those two sections alone, it's clear that knowledge of the law is not a prerequisite to civil nullification under 804, which only calls for the willful making of the contract. This logic, this distinction between civil nullification and criminal liability echoes the logic of the United States Supreme Court in U.S. v. Bryan. And furthermore, Judge Chin, in response to your question, what is meant by willfulness in this context, that question was answered by the New York State Comptroller in an opinion cited on page 17 of our brief. The Comptroller said that a contract is willfully entered into if the official has knowledge of the facts that constitute a prohibited interest in the contract. And that, of course, is consistent with the language in . . . What facts did he have knowledge of here that implicates this, that makes it knowing? He had knowledge of the fact that he was a trustee of the village. He had knowledge of the fact that he had an interest in the contract. And he had knowledge of the existence of the contract. Those are all three, those are the three elements of an 801 violation. You will agree that the characterization of the resolution as a contract wasn't obvious in that the district court first found that it wasn't a contract and doesn't look like a contract. I mean, it had those implications and we're past that now, having been construed in that fashion. Well, respectfully, it was obvious to me. It was obvious to the village at the time that I represented the village. And in fact, contrary to Mr. Murray's arguments a moment ago, there was a discussion at the meeting, in the minutes, on the record, when the 2007 resolution was adopted, discussing the fact that it was a prohibited contract and that Mr. Entel's recusal was insufficient to cure the violation. If he had resigned from the board, would that have been sufficient? Absolutely yes. And could you explain to me . . . I've been puzzled by the fact that the dedication had been on the books and the deed filed since 1972, and the village had done nothing to accept it until this series of events occurred. Did the village have no obligation to maintain it, to respond in a timely way? Was it entitled to just keep it on the books as an offer indefinitely? Well, in fact, the second department, the New York State Supreme Court's second department recently answered that question in the Underhill case cited in our brief. It said . . . the second department said that a lapse of time does not invalidate an offer of dedication. What I understood was that both parties have to rescind it. It can't be done unilaterally. Actually all interested parties have to rescind it, as stated by the New York Court of Appeals, in a related case. So all interested parties would include all the landowners, the 25 or 27 who bought in Reliance? That is correct. That is correct. And that is the import of the Court of Appeals decision. And what is wrong in your view with the argument that Mr. Entell had enough of a property right, having he be the fee owner, to have some kind of due process rights to notice before the village took the 2007 action? Why isn't that a fair position? Well, that's not a fair position first because Mr. Entell stepped into the shoes of Four Real Homes, the original developer. The developer had due process at the time of the original planning board decision approving the subdivision. It seems a little artificial. He wasn't even on the scene when the original plat was approved. And he had acquired at least a facially valid property interest. Mr. Entell certainly cannot plead ignorance of what occurred at the time of the subdivision approval. He was informed in writing by the village attorney. But again, why in 2007 would it not have been more consistent with due process to give notice of the anticipated action? Well... Because he had a... in the land records. Mr. Entell's property interest was analogous to the property interest of the untenured teacher in Board of Regents v. Roth. In that case, the United States Supreme Court said that a teacher who has no tenure does not have a constitutionally protected property interest in his continued employment. Similarly, Mr. Entell, who bought the property knowing that it was subject to an irrevocable offer of dedication to the village, did not have a property interest in small acres that was constitutionally protected against the village accepting that offer. There was no requirement in the New York Village Law. You see no difference between land holdings and the land records system and employment. Is that right? Well, the only difference I would say is that Mr. Entell had greater notice than the teacher in Roth. He had not only actual notice from the village attorney prior to purchasing the property, but he also had constructive notice because the deed restriction was set forth on a map filed in the county. I'm asking about the 2007. Did he have actual notice of the resolution that was proposed and then enacted in 2007? No, he did not. So I'd like to return, if I can, for a moment to the willfulness argument. I think it's instructive to point out that the definitional section of the statute 800 subsection 3 says that an officer or employee of the municipality is deemed to have an interest in the contracts of his or her family members, his or her business associates, his or her employer. So you can have a contract with the municipality that violates 801 that the municipal officer is not a party to. It can have been entered into without that officer's participation and without that officer's knowledge. I'd like to return for a minute just to the 2007 and the procedural due process line of questions I was just asking. So he did not have actual notice of the 2007 action by the village. Yet he was the, on the land records, he was the fee owner of the property. Why wouldn't it be more consistent with his procedural due process rights to give him some notice and a chance to be heard before the village took this action? Well, the land property records not only included the deed into Mr. Antel as your honor notes, it also had a recorded irrevocable offer of dedication that his ownership was subject to. He did not have an expectation, a constitutionally protected expectation of continuing to own that property in the event that the village exercised its right to accept the offer of dedication. So because of the 1972 recordation of the dedication on the plat which had been unaccepted and then declined, leaving him possibly to outward appearances, the sole interest holder in the property. The village did not give him any notice and he had no rights to any notice. It had been declined by a contract that was void ab initio. And also, his rights, Mr. Antel's property rights are defined by New York law. Would it prejudice the village in any way to give him rights and to have him be heard? It would not have prejudiced the village. But Mr. Antel's- When the 2007 resolution was passed, is that done in a public proceeding or how is that? Yes, it's done at a publicly noticed public meeting on the record in public. With the agenda published ahead of time. With the agenda published ahead of time. So he would have had at least constructive notice through that? Yes, yes. And the point that I would just like to make is that the constitution of the United States, of course, does not create property rights. It protects property rights. Property rights are created by state law. The state law that applies here is the New York village law. Article seven of the New York village law, which governs subdivisions and creates this right on the part of the municipality to require a developer to offer for a property included in the subdivision, it provides for the offer of dedication. It does not provide for any notice to the offeror in the event the offer is accepted. And of course, traditional notions of contract law indicate that an agreement is made by an offer and an acceptance. And that is what occurred here when the village filed- The offer was on the books for over 30 years without any acceptance by the village. That's correct. Traditional notions of contract law might lead you to a different place. Well, the village attorney, however, explicitly in writing, in a letter that's in the record and cited in our brief, informed Mr. Antel prior to his purchase of the property that it was subject to the village accepting the offer of dedication, which would result in the ownership of the property being vested in the village. And I'm sorry, I've lost the other point. But- Did Mr. Antel confer a benefit on the village than having cleaned up the land, the 1.1 acres, cleaned it up, done screen planting, and removed the trash, and so on? Does he have a claim against the village for having provided that service? Does he have a civil claim for money damages? I would say not. He benefited from that himself. He enhanced his own backyard. That was the effect of that work. And furthermore, the cases have indicated that you don't have equitable claims against a municipality that would defeat a prohibition against a contract with the municipality, a prohibited contract. That was Justice Alito's decision on the Third Circuit, arising out of the Virgin Islands. So, really, equitable principles don't apply here. This is governed by statute. Thank you. Thank you. We'll hear the rebuttal. I just want to address one of the comments by Mr. Leventhal that the agenda was published beforehand. First of all, there's nothing in the record that indicates that that is the case. They may have a public notice of public meeting, but I don't believe they published the actual agenda of that meeting. In any case, the record has absolutely nothing reflecting that the 2007 meeting was, the agenda was published beforehand. With regard to the due process claim, you can't ignore the context. They did a title search right before they did the 2007 resolution that showed that he was the owner of the property as of record. There was a meriorial election just a year before between the two, between Mr. Entel and the current mayor, Meckerman. And that this was done after knowing exactly what his interest was, not telling him and then doing it at a board meeting and taking away his 1.1 acre. After the 2005 resolution had been passed and he had screened the property and put money in to protect it. There's no reason why notice could not have been given to Mr. Entel prior to the 2007 meeting and there is a good assumption as to why notice wasn't given at that time, given the relationship between the parties. Also with regard to willful, Mr. Leventhal said, well, he willfully knew that he was entering into a contract, or that he acknowledged he was. He didn't know he was entering into a contract. This was a board resolution. He wasn't even a party to the board resolution. There were some conditions that were attached to it that he agreed not to develop it and to have it screened. But he wasn't even a party to a quote contract. None of his relatives were a party to a contract. This was never seen as a contract until this litigation started. And this court made a determination that it was a contract a couple of years ago. No one, the first district court didn't know it. The village attorney at the time didn't view it as a contract. No one viewed it as a contract. It was a land use provision which required him to recuse himself. And the question is, well, why did he recuse himself? Because if he went for zoning variance, or if he went for some kind of land use provision, there is a provision of the code that requires him to disclose his interest and recuse himself. That's 809, that is what the district court originally thought that this resolution was. That is how he behaved as if it was under a land use resolution under 809. There was nothing willful about his conduct. And again, there's a lot of stuff on Long Island that goes back and forth about political shenanigans, quite frankly. And the best people that are in a position to sort this stuff out is a jury. They hears all the facts, hears all the witnesses, sees the demeanor. This court has held that it's a question of fact. They can make a determination as to if Mr. Intel was acting willfully in this context. And I think that's an appropriate way of having this matter finally resolved. Thank you. I'm sorry, do you have a- No, thank you. Okay. We will refer to this issue.